30 C.C.P.A. (Patents)

**SHUMAKER v. PAULSON.**
Patent Appeal No. 4684.

Court of Customs and Patent Appeals.
June 1, 1943.

J. F. Mothershead and Joseph Y. Houghton, both of Washington, D. C. (Paul P. Stoutenburgh, of Washington, D. C., of counsel), for appellant.

Harry A. Yerkes, Jr., of New York City (Lee B. Kemon, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is one of a series of appeals in related interference proceedings decided concurrently herewith.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding priority of the invention defined by the single count in issue to the party Paulson.

The interference is between an application of Paulson filed on July 15, 1929, and an application of Shumaker filed on July 7, 1931.

Joseph J. Mascuch, appellee in Appeals Nos. 4695, Paulson v. Mascuch, and 4696, Hyland v. Mascuch, 30 C.C.P.A., Patents, ——, 136 F.2d 706, decided concurrently herewith, was also a party to this interference proceeding, but did not appeal from the decision of the Board of Appeals, adverse to him.

The general subject matter of the invention is the same as in related cases hereinbefore referred to, viz., the shielding of spark plugs for airplanes to improve the operation of radios thereon.

The count in issue reads as follows: "In combination, a spark plug comprising a metallic cap and a vertical stem having an outlet, a conductor having a connection with said stem at the outlet, a dielectric member mounted on said cap and enclosing said outlet and providing for the free

movement of said connection therein and a thin metallic coating on said conductor and a thin metallic coating enclosing said member, said coatings being electrically connected with said metallic cap."

The preliminary statement of Shumaker alleged conception of the invention on July 1, 1927, and reduction to practice on August 30, 1929.

Paulson in his preliminary statement alleged conception of the invention early in the year 1927 and reduction to practice "in the early part of June 1928."

Both parties took testimony. By stipulation the testimony was made applicable to this interference, and also to Interference Nos. 69,428, 73,561, 73,562, 73,564 and 73,630, each of which is involved in some of the companion cases decided concurrently herewith as aforesaid.

Inasmuch as Shumaker is the junior party, the burden was upon him to establish priority of invention by a preponderance of evidence.

The issues herein, as in the said companion cases, involve principally questions of fact, and as the Patent Office tribunals concurred in the findings of fact, the rule is here applicable that such findings will be accepted by us unless shown to be manifestly wrong.

In arriving at our conclusion herein it is necessary for us to consider only the dates of conception to which the respective parties are entitled, and whether Paulson derived the invention from Shumaker.

It appears that Shumaker is an electrical engineer, a graduate of Ohio State University, and at all of the times hereinafter mentioned was in the employ of the War Department as a mechanical engineer in charge of the "Ignition Unit Power Plant Laboratory" Materiel Division at Wright Field, Dayton, Ohio; that Paulson is chief engineer for the "B. G. Corporation," a manufacturer of aircraft spark plugs, located in New York City, to which corporation his application has been assigned.

Shumaker contends that the record establishes conception of the invention by him as early as July 15, 1927, as evidenced by a certain sketch in evidence, Shumaker Exhibit 4, bearing that date.

With respect to this sketch the Examiner of Interferences in his decision stated: "It has also been held in interference 69,428 that Shumaker exhibit 4 did not disclose the invention therein claimed in issue, and the reasons for which it failed to support the issue in that case are deemed equally applicable here. It was also pointed out that Shumaker exhibit 4 was wholly uncorroborated."

In the companion cases, Appeals Nos. 4689, Shumaker v. Paulson, and 4690, Paulson v. Hyland, 30 C.C.P.A., Patents, ——, 136 F.2d 686, we held, upon the same record that is here before us, that Exhibit 4 was not sufficiently corroborated to establish conception by Shumaker as of its date and our holding there is controlling here.

Neither the Examiner of Interferences nor the board found any specific date for conception to which Shumaker is entitled, but impliedly found that the evidence establishes that he conceived the invention prior to any date to which Paulson is entitled, for both tribunals found lack of diligence by Shumaker in reducing the invention to practice, and of course, Shumaker would be chargeable with diligence only if he had conceived the invention prior to Paulson.

At any rate, the evidence clearly establishes that Shumaker is entitled to a date for conception prior to any date which can be awarded to Paulson.

There is in the record a letter dated May 25, 1928, signed by Major MacDill, Shumaker's superior, but initialed by Shumaker, addressed to the B. G. Corporation "Attention—Mr. G. M. Paulson, Chief Engineer," and with this letter there were inclosed certain drawings, disclosing the involved invention, which were also offered in evidence.

The last paragraph of said letter reads as follows: "This design is being forwarded for your comments and your opinion as to whether or not this plug could be satisfactorily constructed."

In his testimony Paulson admits the receipt of this letter, and on June 1, 1928, he replied thereto as follows:

"War Department Air Corps,
"Materiel Division,
"Wright Field,
"Dayton, Ohio.
"Attention—Major Leslie MacDill.
"Subject: Shielded Spark Plugs.
"Gentlemen:

"In reply to your letter of May 25th, the writer has designed and built shielded plugs of the same general construction as you propose, and is also working on a shield to

fit over our standard Hornet spark plug. The shielded plug which has been built is constructed from our regular Model 1XA plug, and could also be built around the Model 1XB.

"The plugs which we have ready for test are approximately the same length as our regular plug, except that the ignition wire goes directly into the end of the plug instead of fastening by a clip from the side. In the construction of these plugs mica has been used entirely for the insulating material, and the plugs seem to be as rugged and practical for general use as our regular line of plugs.

"The writer expects to be at Wright Field the first part of the coming week, and will have sample plugs along to show, and would like very much to talk over the problem with your engineers assigned to this work.

"Very truly yours,

"The B. G. Corporation

"By: (Signed)
    "George M. Paulson,
    "Chief Engineer.

"GMP: MC"

In the ordinary course of business Paulson would have received the letter of May 25th not later than May 28, 1928, and Paulson does not deny that he had received it on or before said date.

It is therefore established that Shumaker conceived the invention not later than May 28, 1928.

With respect to the evidence as to Paulson's claimed conception, his first drawing disclosing the invention is dated May 29, 1928, but Paulson's testimony concerning this drawing is not corroborated by any witness. It is clearly established, however, that on June 5, 1928, Paulson delivered to the Navy Yard at Washington, D. C., a number of spark plugs embodying the invention, and these plugs were successfully tested on June 26, 1928. While these plugs were not of the same design as the design submitted to Paulson with the letter of May 25th, it is conceded that the plugs so made respond to the count here in issue.

Paulson in his testimony is very vague and indefinite as to the time he claims to have conceived the invention.

It appears that on October 10, 1933, a patent was issued to Paulson for a shielded spark plug, of a character not here involved, the application for which was filed on September 4, 1930.

With respect to said patent and the invention here involved, Paulson testified as follows:

"Q9. Mr. Paulson, will you please state when you conceived the inventions here in issue, distinguishing, if you can, between the invention or inventions of your application and the invention or inventions disclosed by your patent? A. I would say I conceived the invention disclosed by the application and the patent, the general aspects, some time between December, 1926, and the time of the applications.

"Q10. Is that as close as you can fix this important date or dates? A. I would say yes, in view of the fact that my records show that I was working on the general problem during that time."

Upon the assumption that Paulson is an independent inventor we would be compelled to hold upon the evidence in the record that he conceived the invention after May 28th and before June 5th, the latter date being the date upon which he delivered spark plugs to the Navy Yard.

It being established that Shumaker is entitled to May 28th for conception of the invention, and that by that date it had been disclosed by him to Paulson, the question arises as to whether Paulson derived the invention from Shumaker. If he did, the successful testing of the spark plugs furnished to the Navy Yard, under well settled principles of law, inured to the benefit of Shumaker as an actual reduction to practice of the invention, although under his preliminary statement such reduction to practice would relate to August 30, 1929.

Upon this point the Examiner of Interferences in his decision, after holding that Shumaker's Exhibit 4 was not corroborated and failed to disclose the invention here involved, stated: "It is therefore felt that Shumaker has not offered any substantial proof to indicate the clear and full disclosure to Paulson necessary to sustain an award in his favor on the ground of Paulson's lack of originality. Anderson v. Wells, 122 O.G. 3014; 1906 C.D. 667."

The examiner made no reference to the disclosure of the invention by Shumaker to Paulson in the drawings accompanying said letter of May 25, 1928.

The Board of Appeals, however, did consider said letter and drawings. In its decision it stated:

"Shumaker contends that the Examiner of Interferences has overlooked or disre-

garded the testimony particularly with respect to Shumaker's drawings, Exhibits 3 and 23 to 27, inclusive, said to be made on May 21, 1928 and forwarded by Shumaker to Paulson with a letter, Shumaker Exhibit 22-b, dated May 25, 1928.

"The examiner referred to Paulson's cross Exhibits 94 and 95C introduced to show that according to Shumaker's record, on dates of June 7 and June 13, 1928, Shumaker had made certain notations quoted on page 4 of the Examiner's decision to the effect that Paulson of the B. G. Corporation visited the Division and this Company is now working upon a radio-shielded plug and the original design was shown during Mr. Paulson's visit.

"Paulson stated in answer to Q.178, in regard to the drawing, SK-12502, which is Shumaker Exhibit 3, that when he received this letter from Shumaker and the accompanying prints, sketches had been made in regard to his own development and possibly some work had been done with parts to determine limits before manufacturing and that in his letter of May 22 he gave a very general description of the plug which he had worked out. Paulson, on page 108 of his brief, quotes from his letter of May 22, which constitutes Paulson Exhibit 2, as to the disclosure he had written to Shumaker. This letter stated, in substance, that he, Paulson, had worked out a carefully designed plug with radio shielding so that by bringing the Belden covering down to the top of the plug and attaching it there the ignition system is completely shielded as far as the plugs are concerned.

"While this description may not be as definitely specific as the count, it would indicate that Paulson had worked out a shielded plug of the same general nature as the count at least as early as May 22, 1928, which is prior to the date of Shumaker's letter of May 25, 1928 to Paulson enclosing his Exhibit 3. While Shumaker seems to have no recollection of this Paulson letter of May 22, the letter was identified by Paulson's stenographer, Mary Coen.

"Since Shumaker's position here is that of charging derivation by Paulson, the burden is on him to prove this derivation and in view of the record, we are not conclusively convinced that Paulson derived the invention from Shumaker's disclosure to him and it is considered that the examiner's position here is properly taken."

At this point we would observe that while the burden was upon Shumaker to establish derivation of the invention from him by Paulson, when Shumaker produced conclusive evidence of disclosure of the invention to Paulson prior to any proven date of conception by Paulson, he had made a prima facie case of derivation by Paulson from him; that while the burden of proof was not thereby shifted from Shumaker to Paulson, it was the duty of Paulson to go forward with proof to overcome the prima facie case made by Shumaker. See McCormick et al. v. Plumstead, 25 C.C.P.A., Patents, 925, 94 F.2d 999.

The case of Greenwood v. Dover, 23 App. D.C. 251, presented facts very similar to those at bar. There the junior party Greenwood disclosed the invention to the senior party Dover prior to any established date of conception by the latter. Both parties were limited to a constructive reduction to practice by the filing of their respective applications. The court reversed the holding of the Commissioner of Patents which awarded priority of invention to the senior party Dover. In its decision the court stated:

"The fact that Dover received a disclosure of Greenwood's conception in the course of an interview looking to arrangements for its manufacture for commercial purposes renders it necessary for him to prove with reasonable certainty that he had a prior conception of the same invention. Gallagher v. Hastings, 21 App.D.C. 88, 99.

"Moreover, as Greenwood has been found to have had his conception at least as early as June 20, 1901, the burden is thrown upon Dover to prove a conception prior to that date. This, we are of the opinion, he has failed to do."

The question remains whether upon the whole record Shumaker has established derivation of the invention by Paulson from Shumaker.

The Board of Appeals, as will be noted from that portion of its decision hereinbefore quoted, gave considerable weight to a letter, Paulson's Exhibit 2, bearing the date of May 22, 1928, written by Paulson to Shumaker, the relevant portion of which as relied upon by the board reads as follows:

"Since I saw you last I have been doing considerable experimental work on single cylinder engines with the Hornet plugs, and

have made some slight changes in the design of the plug which are very promising, especially for super-charging and super-compression engines. I have also worked out a carefully designed plug with radio shielding, so that by bringing the Belden covering down to the top of the plug and attaching it there, the ignition system is completely shielded as far as the plugs are concerned. This shielding will also serve for seaplane work where salt spray tends to give trouble. I believe that there is a market for such a plug and that it has some possibilities. We cannot be sure of this until we have run tests in the air, but we are assured by authorities on radio shielding that a completely shielded ignition system, plug and all, will practically eliminate radio interference.

"I hope to be in Dayton the latter part of this week or the first part of next week and will try to have a couple of sets along to show."

In the first place it is clear that the description set forth in said letter does not respond to the count here involved, and the board in effect so found. The mere fact that Paulson on May 22 had devised *some* kind of a shielded spark plug in no way indicates that he had conceived the invention here involved. That Paulson had, prior to May 1928, worked upon the problem of spark plug shielding is well established. It is also equally well established that for many months Shumaker had been working upon the same problem, as had Mascuch, the third party to the interference, who did not appeal from the board's decision. Indeed, Shumaker positively testified that he disclosed the invention of the count to Paulson long prior to May 1928, but this was positively denied by Paulson, and hence the board did not err in holding that Shumaker had not established disclosure of the invention to Paulson, prior to Paulson's receipt of the letter of May 25th.

It also appears from Paulson's testimony that one Hyland, who is a party to the interferences, concurrently decided herewith, had also prior to May 28th worked upon the problem of the shielding of spark plugs and claimed that he was the prior inventor of a shielded spark plug, which to use the language of the board in referring to the Paulson letter of May 22nd was "of the same general nature" as the count involved.

However, Hyland was not made a party to this interference, presumably because while he had invented a shielded spark plug "of the same general nature" as the count before us, his invention did not respond to all of the elements of the count.

It follows from the foregoing that Paulson's letter of May 22nd may not be considered as any evidence that he was in possession of the involved invention prior to the receipt by him of said Shumaker letter of May 25th.

Another circumstance of some significance is that in the Paulson letter of June 1 to Shumaker, hereinbefore quoted, it is stated that the B. G. Corporation had completed shielded plugs "of the same general construction" as proposed by Shumaker, from which it is argued that Paulson must have been in possession of the invention prior to Shumaker's disclosure to him in the letter of May 25th.

However, with respect to said last named letter, Paulson testified as follows: "Q178. At the time that you received this letter from Mr. Shumaker and the accompanying prints of his drawing SK-12502 of a dummy shielded spark plug, in what stage of development was your original 1-XA shielded spark plug? A. Sketches had been made, *possibly* some work had been done with parts to determine limits before manufacturing, and in my letter of May 22nd, I gave a very general description of the plug which I had worked out, that is, description of a straight type shielded plug. (Italics ours)

With respect to the length of time required to produce a spark plug embodying the invention Paulson was very vague and indefinite. Upon cross-examination he testified as follows:

"XQ936. And those first plugs were completed sometime between May 28, 1928, and June 5, 1928, I believe; is that correct? A. They may have been made slightly before May 28, 1928. Without consulting all my correspondence exhibits, I would not be able to fix the date exactly.

"XQ937. On your very early development work on shielded spark plugs, I understood you to say that the making of the physical plug followed closely on the making of any sketches, is that correct? A. I could not state the exact days between the making of the sketches and the first production of the complete plug.

"XQ938. But it would be a relatively short time on the early development, wouldn't it? A. Might have been expressed in weeks or days."

It thus appears that Paulson was not at all certain that any work had been done upon the spark plugs embodying the invention prior to his receipt of the Shumaker letter of May 25th, and as one of his witnesses testified that it was a "hurry up job," it is probable that the spark plugs sent to the Navy Yard on June 5th, which embodied the invention, were made after May 28th.

Furthermore, there is nothing in Paulson's letter of June 1st to Shumaker claiming that he was a prior inventor of the invention disclosed in the Shumaker letter of May 25th.

The letter is subject to the construction that he had merely designed a different kind of plug, embodying the invention, which design, in fact, might be patentable to Paulson, but this is not a subject of inquiry here.

The Examiner of Interferences also relied upon a statement by Shumaker in his "Project Record" under date of July 11, 1928, Paulson Cross Exhibit No. 95-C reading as follows: "Mr. Paulson of the B. G. Corporation, visited the Division and had a modified design of a Hornet plug which they are developing. The spindle is larger in diameter which allows a longer core without increasing the operating temperature. The baffle also forms the side electrodes and has four points. This construction should materially reduce electrode burning and be less liable to fouling than the present No. 4B. Some of these plugs will be submitted to the Division for test. This Company is now working upon a radio-shielded plug and the original design was shown during Mr. Paulson's visit. Some changes are desirable and when these are completed the Modified design will be submitted for comment."

The Examiner of Interferences also quoted from a letter of Shumaker to the B. G. Corporation, under date of June 13, 1928, as follows: "During Mr. Paulson's visit to the Material Division, the shield design which he had worked out for use on the Model 1XA plug was discussed * * *." (Emphasis added.)

We find nothing inconsistent in the above quoted statements, with his claim of prior conception and disclosure of the invention to Paulson. It is clear, as hereinbefore indicated, that the design worked out by Paulson embodying the invention was different from the design submitted by Shumaker embodying the same invention.

It is true that prior to the declaration of this interference Shumaker never made any claim to Paulson that Paulson had derived the invention from him, but it is also true that so far as the record appears Paulson never definitely made any claim to Shumaker prior to the declaration of this interference that he, Paulson, had independently made the invention defined in the count.

Shumaker on September 18, 1928, filed with the "Patent Liaison Unit of Wright Field" what is termed a "Record of Military Invention" as a basis for a patent application for the involved invention. The application itself, however, was not filed until July 7, 1931, and as hereinbefore noted, Paulson's application was filed on July 15, 1929.

It also appears that on April 6, 1935, Paulson filed a motion to dissolve the instant interference upon the ground that the count is unpatentable to either party.

It may be that neither party was aware in May or June 1928, that the subject matter of the involved count defined an invention, and for that reason the evidence respecting it is, in many respects, indefinite, but there is a clear disclosure of the invention by Shumaker to Paulson, which disclosure is not denied by Paulson, and we are of the opinion that it is manifest from the record that Paulson has not established that he was in possession of the invention prior to such disclosure.

It follows from the foregoing that it must be held upon the record before us that Paulson derived the invention defined in the count from Shumaker; that Paulson's actual reduction to practice in June 1928 inured to the benefit of Shumaker, and the date of reduction to practice alleged in his, Shumaker's preliminary statement, is immaterial in this proceeding.

In view of these facts, the question of diligence upon the part of Shumaker in reducing the invention to practice does not arise.

For the reasons herein stated the decision of the Board of Appeals is reversed.

Reversed.